PRANGE v. CITY OF FLINT.

1. MUNICIPAL CORPORATIONS—CONTRACTS—SEWER CONTRACT—RES-
ERVATIONS NOT IN CONTRACT INAPPLICABLE.

A clause in instructions to bidders on sewer contract, re-
serving to the common council of the city the right to
adjust the extent of any district or system to the amount
of the appropriation, or to diminish the extent of the work
by deciding not to build any portion thereof, *held*, not
applicable to authorize diminishing the work provided for
in the contract after its execution.

2. SAME—BREACH OF CONTRACT.

Failure of the city officials to designate the places where
some of the man-holes and catch-basins were to be placed,
as provided for in the contract, and failure of the com-
mon council to act when its attention was called thereto,
*held*, to amount to a breach of the contract, entitling the
contractor to damages occasioned thereby.

3. SAME—ACCEPTANCE OF PAYMENT FOR WORK DONE—ESTOPPEL—
BREACH OF CONTRACT—INTENT.

Acceptance by the contractor of payment in full for work
done under a sewer contract would not estop him from
bringing an action for damages for breach of the contract
in refusing to have done all of the work provided for
therein, where neither party intended said payment to
cover damages for said breach.

4. TRIAL—READING OF NEWSPAPER ACCOUNTS—NEW TRIAL.

That the jury read in a newspaper certain statements
made by the trial court in a ruling in their absence,
*held*, not ground for new trial.

5. NEW TRIAL—EVIDENCE—GREAT WEIGHT OF EVIDENCE.

Verdict for plaintiff *held*, not against the great weight of
the evidence.

6. APPEAL AND ERROR—EVIDENCE—ADMISSIBILITY.

Assignments of error on the admission and rejection of
testimony, *held*, not sustained by the record.

Error to Genesee; Black (Edward D.), J. Submitted January 19, 1922. (Docket No. 112.) Decided March 30, 1922.

Assumpsit by Albert H. Prange against the city of Flint for breach of a contract for the construction of certain sewers. Judgment for plaintiff. Defendant brings error. Affirmed.

*Farley & Selby* and *Fred S. Flick*, for appellant.

*Knappen, Uhl & Bryant* and *Carton, Roberts & Stewart*, for appellee.

SHARPE, J. In 1913, the city of Flint adopted a comprehensive plan for a sewer system submitted by a sanitary engineer. Detailed plans, specifications and blue prints were prepared. The city advertised for bids for furnishing the material and doing the work. Printed "Instructions to Bidders" and a form of "Proposal" were furnished to intending bidders. Eight of the proposals or bids submitted by plaintiff were accepted and contracts entered into with him for the construction of eight parts of the system. These contracts are all similar in form, except as to the description of the sewer, and provide for its construction and completion—

"as per the plans and specifications therefor heretofore adopted by the common council of the city of Flint, * * * now on file in the office of the city clerk, and according to the printed specifications and contracts, including the bid hereto annexed, all the terms and conditions of which are made a part hereof as fully and particularly as if written herein."

It was further provided that—

"all work done in the construction of said sewer and refilling said trenches shall be under the direction and to the satisfaction of the city engineer and the sewer committee of the common council of said city."

The specifications provided for the appointment of an inspector and that:

"Directions given by the city engineer or inspector to the superintendent or overseer who may have charge of any particular work shall be received and obeyed by him the same as if given to the contractor."

Attention is also called to the following provision in the charter of the city of Flint (section 3, chapter 23, Act No. 346, Local Acts 1901):

"The construction and repair of all public improvements shall be under the supervision of the city engineer."

The detailed plans and drawings are not in the record. No claim is made that the proposals or bids of the plaintiff as accepted were not in conformity therewith. Plaintiff's bids provided for the construction of 210 man-holes and 490 catch-basins. It appears, however, that the particular location of these was to be designated by stakes to be set by the engineer or inspector. It is plaintiff's claim that by reason of the refusal of such officers to mark the location of these man-holes and catch-basins, though requested by him so to do, he was permitted to construct but 137 man-holes and 202 catch-basins. The bids for such work were uniform at $40 each. He offered proof to show that they could have been constructed for about one-half that sum and brings this suit to recover the damages he claims to have sustained thereby. He had verdict and judgment for $3,480.

The errors assigned by defendant will be considered in the order discussed by counsel in their briefs.

1. Defendant insists that a copy of the "Instructions to Bidders" was annexed to each of the contracts at the time of their execution and became a part thereof and justifies the action of the engineer or inspector in omitting the construction of the man-holes and

catch-basins complained of by reason of the language of the fifth paragraph:

"5. The common council reserves the right to adjust the extent of any district or system to the amount of the appropriation, or to diminish the extent of the work by deciding not to build any portion thereof it may deem advisable."

There is much dispute in the testimony as to whether a copy was annexed to the contracts when they were executed. Neither the contracts, the specifications nor the proposals refer to this printed form. But, even if annexed, we are impressed that the language employed was not intended to reserve the right to diminish the work provided for in the contracts after their execution. It is not ambiguous. Its purpose seems clear. The reservations were evidently inserted to enable the council to restrict the work for which the city would contract in case the amount of the accepted bids exceeded the appropriation made for constructing the sewer systems according to the plans and specifications. The advertisement is not in the record. It became the duty of the council to either accept or reject the bids as made. To hold that they might thus reserve the right to diminish any part of the work provided for in the contracts would open the door to fraud as a bidder might have a secret understanding that such would be done and thereby obtain an advantage over competitors. As is said by Judge Dillon in his work on Municipal Corporations (Vol. 2, 5th Ed.), § 807:

"The plan and specification are essential to competitive bidding because it is only through their agency that there is a reasonable assurance that all bidders are competing upon the same basis and without favoritism and that no fraud enters into the award."

It must also be assumed that bidders rely on the fact that should their bids prove unprofitable as to

one or more items the loss occasioned thereby may be made up by the profit on others. The bids were for a specific work of construction, containing many items, and their acceptance by the council and the execution of contracts pursuant thereto must be construed as expressly defining the rights and liabilities of the parties thereunder. We feel constrained to hold that the city or its engineer had no right or power to restrict the work which plaintiff contracted to do by eliminating this large number of man-holes and catch-basins.

2. Defendant also insists that any action or non-action of the city engineer or inspector was without authority from the council and not binding on the city. There is no evidence that the council took any action in the matter. There is, however, an abundance of testimony tending to prove that the attention of many, if not all, of the individual members of the council was called to the complaints of plaintiff's superintendent, Mr. Stoddard, in respect to the conduct of the engineer and inspector. He testified that he protested to the council concerning it on several occasions. He is corroborated by several witnesses, including the then mayor of the city.

In considering this question, we must bear in mind the distinction between a modification or change in the contract by an official of the city without action of the common council and the acts here complained of. As to the former the authorities cited by plaintiff (*Rens* v. *City of Grand Rapids,* 73 Mich. 237; *Campau* v. *City of Detroit,* 106 Mich. 414; *McCurdy* v. *County of Shiawassee,* 154 Mich. 550; *City of Flint* v. *Surety Co.,* 202 Mich. 438) are controlling. But the claim here made is that the officials, under whose supervision and to whose satisfaction the work was to be performed, by their refusal to designate the places where these man-holes and catch-basins were to be

placed, prevented performance by plaintiff and thereby caused him loss of profits. The jury were justified in finding that complaint was made by plaintiff to the council. It took no official action. The proofs as a whole justified a finding by the jury that there was a breach of the contract by the defendant, and also the instruction of the court that, if they so found, the plaintiff was entitled to his damages occasioned thereby.

3. Final estimates of the work done under each contract were prepared by the city engineer. Plaintiff accepted payments as shown thereby. Defendant claims he is thereby estopped from prosecuting the claim here sued on. The plaintiff and his superintendent admitted that the payments made were in full of the amounts due for the construction work done under the contracts. Defendant does not claim that the payments included a settlement of the claim here made or that it was considered at the times of payment. The court instructed the jury that, if the final payments were intended by the defendant and accepted by the plaintiff as a settlement of all sums due under the contract, the plaintiff could not recover. Of this we think defendant has no just cause for complaint.

4. A motion for a new trial was made and denied. One of the grounds therefor was that the jury were prejudiced against the defendant by reading certain statements made by the trial court in a ruling in the absence of the jury, afterwards published in a city paper. While error is assigned on the refusal to grant a new trial for this reason, it is not discussed by counsel. We have considered it, but think it controlled by what was said in *Re Thompson's Estate*, 157 Mich. 669, 676.

It was also urged on the motion that the verdict was against the great weight of the evidence. We have read the record with care and cannot so conclude.

5. The errors assigned on the admission and rejection of evidence have all been considered, but they are not found to be of sufficient importance to deserve special discussion.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.